## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LAMON BOYD, | : | Case No. 3:25-cv-88 |
| | : | |
| Petitioner, | : | |
| | : | |
| | : | Judge Michael J. Newman |
| vs. | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| WARDEN, PICKAWAY | : | |
| CORRECTIONAL INSTITUTION | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATIONS

Lamon Boyd, a state prisoner proceeding without counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (ECF No. 8, 8-1), the Return of Writ (ECF No. 15), Petitioner's Traverse (ECF No. 25), and the state court record. (ECF No. 14, 14-1, 14-2, 22-1). For the reasons that follow, it is **RECOMMENDED** that the petition be **DENIED** and this action be **DISMISSED**.

### I.    FACTUAL BACKGROUND

On January 12, 2021, a Montgomery County, Ohio grand jury indicted Boyd on two counts of trafficking in persons (compulsion to involuntary servitude), in violation of Ohio Rev. Code Ann. § 2905.32(A); one count of aggravated possession of drugs (100 times bulk or more), in violation of O.R.C. §2925.ll(A); one count of corrupting another with drugs (juvenile)(Schedule I or 11), in violation of O.R.C. §2925.02(A)(4)(a); three counts of having weapons while under disability (prior offense of violence), in violation of O.R.C. §2923.13(A)(2); one count of aggravated menacing, in violation of O.R.C. §2903.21(A); one count of assault, in violation of

O.R.C. §2903.13(A); and one count of sale to underage persons, in violation of O.R.C. §4301.39(A). The following represents the relevant facts as reported by the Second District Court of Appeals ("Court of Appeals")[1]:

{45} Evidence from the motion to suppress hearing established the following. Dayton Police Officers Scott Myers and George Kloos were dispatched to a crash investigation on Kensington Avenue in Dayton on the afternoon of January 1, 2021. A caller had complained of damage to their storage POD, which appeared to have been struck by a car. The officers observed a license plate bracket and vehicle track marks in the front yard, which led them to the neighbor's home, which was Boyd's residence. When the officers knocked on Boyd's door, a female answered the door and claimed that Boyd was her uncle. Eventually, Boyd came outside and inquired about the vehicle track marks in his yard. A truck in Boyd's front yard sat in line with the tracks, and the license plate bracket officers found in the neighbor's yard matched the truck. Based on the evidence, it appeared that the truck at Boyd's house had crashed into the neighbor's POD. The officers completed a non-investigative traffic crash report about the incident. They did not arrest Boyd and did not inquire further about the female who had answered the door. During their interaction with Boyd, he had glossy eyes and an odor of alcoholic beverage coming from his breath.

{46} In the early morning hours of January 2, 2021, Dayton Police Officers Matthew Brown and Zachariah Hastings responded to a request for a welfare check on two juveniles at Boyd's home; the request was made by an administrator of a group home in Clayton, Ohio. No one answered the door at Boyd's home so after receiving permission from their supervisor, the officers went to the group home in Clayton to further investigate. After speaking to 14-year-old R.H., Dayton Police Detective John Howard, who was assigned to human trafficking investigations, was asked to assist. R.H. reported to the officers that she and two other juveniles, B.H. and M.H., had run away from the group home on the night of December 31, 2020; they had gotten a ride from a man who provided them with alcohol and then drove them to Boyd's home. The juveniles were also given alcohol and marijuana at Boyd's home. R.H. also informed the officers that the two other teenage runaways were still inside Boyd's home on Kensington and were under the influence of narcotics. According to R.H., she believed the marijuana they had been given had been laced with something, because the other two girls had been hallucinating, shaking, and convulsing as if they were having seizures. Based on the reactions of the other two girls, R.H. did not consume any of the alcohol or drugs at Boyd's home.

{47} R.H. recounted that, during the night of December 31, 2020, into the morning of January 1, 2021, Boyd had taken R.H. outside into the backyard, held her hand around a handgun, and discharged several rounds into the air. R.H. advised that she

---

[1]    The relevant procedural history reported by the Second District Court of Appeals is included in Section V(A), below.

had observed multiple firearms in the house, but specifically on the table inside the front room of the home. R.H. also informed police that she believed B.H. had engaged in sexual activity with Boyd in the back bedroom, after which Boyd gave B.H. $100 for the sex act. Although the girls had lied about their ages, claiming to be either 17 or 18 years old, they were only 14 and 15 years old at the time. Boyd was 43 years old.

{48} During the day of January 1, 2021, R.H. said that the girls took Boyd's car keys while he was passed out in the back bedroom, got into Boyd's truck to go shopping, and then crashed the truck into a POD container located in the next-door neighbor's yard. When the police arrived, B.H. answered the door, and they woke up Boyd so that he could speak to the police. After the police left, Boyd hit B.H., knocked her to the ground, and pointed a gun at her. Boyd pointed the gun to the back of B.H.'s head and her lower back area. Boyd informed the juveniles that they would have to engage in sexual activity with friends, sell drugs, or "do cam" to pay for the damages to the car. To "do cam" meant performing on an online streaming service where individuals undress and/or do sexual acts on themselves or others for money.

{49} On the night of January 1, 2021, R.H. left Boyd's house while he was passed out again in the back bedroom. R.H. explained that she was fearful of Boyd for herself and for the other girls. R.H. tried to get the other two girls to leave with her, but they refused. After R.H. left, she contacted her biological mother, who contacted the police and took her to the emergency room; she was treated and released. R.H. was then returned to the group home, where she told the police what had transpired.

{50} After speaking with R.H., officers learned from another female juvenile at the group home that a social media account belonging to B.H. was contacting people and inviting them to the Kensington address. B.H.'s account asked for people to come "hang out and smoke." A juvenile male from the group home obtained Boyd's address on Kensington through B.H.'s social media account. It was not known whether B.H. or M.H. had a cell phone, but Boyd was known to have a cell phone. Both B.H. and M.H. had been reported missing by the administrator of the group home.

{51} After learning of the situation from R.H., officers contemplated initiating a SWAT call-out for a potential hostage rescue, forcing entry into the home and recovering the juveniles, or knocking on the door to make contact with Boyd and then going into the home to get the girls. The officers elected the last option as the least intrusive means and the least likely to cause violence.

{52} Because they had been involved in the traffic crash incident previously, Officers Myers and Kloos were informed that there was a situation at Boyd's home involving missing juveniles and possible human trafficking, and they were asked to contact Boyd. Around 7 a.m., Officer Myers knocked on Boyd's front door and

called out to Boyd to come talk to them. About 5-10 minutes later, Boyd came to the door and stepped out onto the front porch. Although the testimony seemed to reflect that Boyd had closed the door upon exiting the house, it was unclear if he had also locked the door. In any event, the officers handcuffed Boyd and patted him down before taking him to the rear seat of a police cruiser. During the pat down, officers recovered Boyd's house keys.

{53} After Boyd was secured, officers entered Boyd's home searching for the juveniles that were believed to still be inside. The officers located B.H. and M.H. inside the home; they were partially unclothed and under the influence of drugs. While inside the home, officers observed a gun sitting on a table.

{54} After removing the girls from the home and taking them to Dayton Children's Hospital, officers stayed on the scene to secure the home until the detectives obtained a search warrant. The search warrant was signed at 1:45 p.m. on January 2, 2021. During the execution of the search warrant, several firearms and drugs were recovered from inside Boyd's home.

(ECF No. 14 at PageID# 489-492).

On January 25, 2022, Boyd pleaded no contest to the charges in the indictment and was sentenced to eleven years imprisonment. (ECF No. 14-1 at PageID# 1403-1420, 1421-1432). He appealed his plea to the Court of Appeals, asserting two assignments of error:

(1) The trial court should have granted Boyd's Motion to Dismiss on grounds that his speedy trial rights were violated.

(2) The trial court abused its discretion in overruling Boyd's Motion to Suppress.

(*Id.* at PageID# 427). On June 23, 2023, the Court of Appeals issued a decision affirming Boyd's conviction. (*Id.* at PageID# 472-504). Boyd filed a Notice of Appeal with the Ohio Supreme Court and a Memorandum in Support of Jurisdiction. (*Id.* at PageID# 505-745). On February 20, 2024, the Ohio Supreme Court declined jurisdiction. (*Id.* at PageID# 747). The United States Supreme Court subsequently denied Boyd's petition for a writ of certiorari. (*Id.* at PageID# 1213-1265).

On September 19, 2023, Boyd filed a Rule 26 Application to Reopen his appeal with the Court of Appeals on grounds that his appellate counsel was ineffective. (ECF No. 22-1). He listed 13 issues for reconsideration: (1)Prejudice to be argued; (2) Brady violations; (3) Warrant; (4)

Affidavit's on the Warrant; Officer Kloos Official Reports; (5) Bill of particular not answered in discovery and provided a year later; (6) Officer Kloos testimony in the suppression Hearing as first on the scene, and first in contact; (7) Withdrawal of Franks Motion; (8) Deceptions on the Courts Records where claimed plea negotiations were going on when there was no plea being negotiated on September 23, 2021 to December 21, 2021; (9) Unjournalized continuances; (10) Continuances requested and granted, without reasons on the record on September 22, 2021 to October 14, 2021; (11) Suppression of evidence by [trial court counsel] and State of Ohio. (12) Unreasonable Ineffective assistance of trial counsel that was never raised in the appeal, by [appellate court counsel], and (13) Abuse of Discretion issue raised has ignored substantive and procedural law and facts significant to the appellant Boyd's exoneration. (*Id.* at PageID# 1765-1766). However, the Court of Appeals only considered properly presented the claims related to the trial court's failure to dismiss the case for speedy trial violations and erroneously overruling his motion to suppress. (ECF No. 14 at PageID# 1206). On June 23, 2023, the Court of Appeals denied Boyd's Application. (*Id.* at PageID# 472-504).

The record submitted by the Respondent does not show that Boyd appealed his Application to Reopen to the Ohio Supreme Court. However, Boyd submitted a letter from the Ohio Supreme Court rejecting his attempt to file an appeal as untimely. (ECF No. 8-1 at PageID# 294). Boyd also submitted grievances he filed with Pickaway Correctional Institution complaining that the mailroom received the opinion from the Court of Appeals denying his Rule 26 Application to Reopen but did not give it to him for 44 days. (*Id.* at PageID# 288-291).

On April 26, 2023, Boyd filed a postconviction petition (*id.* at PageID# 748-769) that he amended once. (*Id.* at PageID# 774-1001). Boyd asserted three claims pertinent to his federal habeas petition:

(1) "the Petitioner's Sixth and Fourteenth Amendment United States Constitutional rights and Ohio Constitutional rights to Section 10 and 16 were violated to both his rights to [e]ffective and reasonable assistance of counsel and to have a fast and speedy trial…" (*id.* at PageID# 749),

(2) "the Petitioner's [Fourth] and [Sixth] Amendment United States Constitutional Rights, and Ohio Constitutional Article I, Section 10 and 16, rights were violated predicated on the illegal search and seizure and the primary officer Kloos refusal to testify in the Motion to Suppress Hearing. This created a prejudice, and denial to hear the primary officers key testimony that would have clearly proven the Petitioner's rights were violated. Counsel Ineffective and Unreasonable representation stands clear" (*id.* at PageID# 758); and

(3) "the Petitioner's Constitutional rights to have obtained the complete discovery in this case where there is proof from the Petitioner's [c]o-defendant's discovery packet that he received evidence and information not in the Petitioner's in violations of the [Sixth] and [Fourteenth] Amendment United States Constitutional right to obtain, and Ohio Constitutions Article I, Section 10 and 16." (*id.* at PageID# 764).

On January 8, 2025, the Montgomery Court of Common Pleas denied Boyd's postconviction petition. (*Id.* at PageID# 1104-1118).

On February 10, 2025, Boyd filed a Notice of Appeal with the Court of Appeals, seeking to appeal the denial of his postconviction petition. (*Id.* at PageID# 1119-1169). The next day the Court of Appeals issued a Rule to Show Cause directing Boyd to show why the appeal should not be dismissed because he failed to file a notice of appeal with the trial court. (*Id.* at PageID# 1170-1172). Boyd filed a response (*id.* at PageID# 1173-1182), but the Court of Appeals dismissed the appeal because Boyd failed to file a notice of appeal with the trial court and because the Notice of Appeal filed with the Court of Appeals was untimely. (*Id.* at PageID# 1185-1189). There is no indication in the record that Boyd filed an appeal with the Ohio Supreme Court and Boyd has not supplied the Court with any evidence of a filing.

## II.    FEDERAL HABEAS PROCEEDINGS

On March 18, 2025, Boyd filed his federal habeas petition, which asserts five grounds for

relief:

> **GROUND ONE**: The Petitioner Boyd's 14th Amendment Constitutional rights to a fast and speedy [sic] was violated in the trial court's Motion to Dismiss that has a liberty interest to the Petitioner's case being dismissed where on appeal there was an oral argument that never clarified the issues on the speedy trial rights in violation of the 6th Amendment to a fair and just trial.

> **GROUND TWO:** There is a 4th and 14th Amendment constitutional violation in the illegal search and seizure of his home, issues, are for the deterrence factor, exigent circumstances, and exclusionary rule stands to be challenged against the alleged actual emergency, and protective sweep to open the Petitioner's locked front door after taking his keys from his pocket without a warrant and upon the affidavits especially George Kloos, who was allowed to not testify.

> **GROUND THREE:** The Petitioner's motion for oral arguments was granted and heard with questionable constitutional outcome dealing with the speedy trial right issues, that was not allowed to be fully addressed in the State's Second Appellate District Court by [Petitioner], the records should be expanded to include the oral argument on the Motion to Dismiss predicated on the speedy trial issues set forth in R.C. 2945. 71 through 73.

> **GROUND FOUR:** The Petitioner's Motion for Reconsideration App. R. 26(B), was denied in an abuse of discretion by the Montgomery County Court of Appeals in their June 23, 2023 opinion, in violation of the Petitioner's Constitutional rights to a fair, just and reasonable opportunity to have his direct appeal reheard due to the errors made in the appellate process, where appellate counsel was in part ineffective for failing to raise issues the ineffective assistance of trial counsel errors, that Petitioner's requested to have raised, and the level of the abuse of discretion that was not raised.

> **GROUND FIVE:** The Petitioner's Motion for Reconsideration App. R. 26(B) should not be procedurally barred predicated on not timely filing it in the Ohio Supreme Court were [sic], and the Petitioner was not able to file a timely Notice of Appeal in the Ohio Supreme Court because the Petitioner did not obtain the actual decision and opinion from the Second Appellate District Court of Appeals, until forty-four (44) days after it was received by the PCI mail room, leaving the Petitioner with one (1) day to file the appeal to the Ohio Supreme

Court to which no delayed appeal pursuant to Rule 7(A)(2), is allowed.

(ECF No. 8-1 at PageID# 225-243). On September 29, 2025, Boyd filed a Motion for Leave to

Amend his petition (ECF No. 19) seeking to add the following additional ground for relief:

**GROUND THREE:** There are clear Brady issues that violate the 6th, 8th, and 14th Amendments pertaining to the 4th amendment dealing with the Motion to Suppress the evidence illegally seized, warrants and affidavits, police reports and more. The Petitioner's liberty and due process rights are violated predicated on the newly discovered evidence discovered after the direct appeal to which the Motion to Expand the Records shou1d be granted as followed.

(ECF No. 19 at PageID# 1515). The Court denied Boyd's Motion to Amend as futile because the

ground for relief he sought to add is procedurally defaulted.  (ECF No. 23.)

Respondent filed Return of Writ. (ECF No. 15).  Respondent contends that Grounds Three,

Four, and Five are procedurally defaulted, Ground Two is non-cognizable, and Ground One lacks

merit. (*Id.* at PageID# 1460-1462).

### III.    STANDARDS OF REVIEW

### A.  AEDPA

The statutory authority of federal courts to issue habeas corpus relief for persons in state

custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA). The United States Supreme Court has described AEDPA as "a

formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in

state court" and emphasized that courts must not "lightly conclude that a State's criminal justice

system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."

*Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

*See also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA...imposes a highly deferential standard

for evaluating state court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz*

*v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## B. Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made

in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and

independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

## IV. Analysis of Procedural Default

Respondent argues that Grounds Three, Four, and Five are procedurally defaulted. (ECF No. 15 at PageID# 1460-1462). The Court disagrees. Respondent argues that these grounds were not presented to the Ohio state courts but reads Boyd's petition too narrowly. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified); Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Ground Three contends, *inter alia*, that Boyd's speedy trial claim was erroneously adjudicated by the Court of Appeals. (ECF No. 8-1 at PageID# 236-240). The Court interprets this as, in part, challenging the state court's adjudication of his constitutional speedy trial rights. Boyd presented this claim to the Court of Appeals (ECF No. 14 at PageID# 427) and the Ohio Supreme Court (*Id.* at PageID# 547-745).

Ground Four contends, *inter alia*, that Boyd's appellate counsel was ineffective. (ECF No. 8-1 at PageID# 241-242). Ground Five contends that Ground Four should not be considered defaulted because of errors in the mailroom at Pickaway Correctional Institution. (*Id.* at PageID#

243). The Court construes Ground Five not as a claim for relief, but as an argument to excuse the procedural default of Ground Four.

Noted above, the Ohio Supreme Court rejected Boyd's attempt to file a late appeal of his Rule 26(B) Application to Reopen his direct appeal. (ECF No. 8-1 at PageID# 294). Boyd submitted a grievance to Pickaway Correctional Institution complaining that the mailroom held the Second District Court of Appeals' decision on his Rule 26(B) Application to Reopen for 44 days. (*Id.* at PageID# 288-291). In response, the mailroom was counseled on the proper handling of mail. (*Id.* at PageID# 289). The letter Boyd received from the Ohio Supreme Court confirms that it was prohibited from considering his late appeal pursuant to Rule 7.0l(A)(4) of the Rules of Practice of the Supreme Court of Ohio.

The Sixth Circuit has held that inaction by prison mailroom officials, which results in a *pro se* prisoner missing a filing deadline, may constitute cause for the procedural default. *See Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) ("Where a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events, however, the [mailbox] rule is sufficient to excuse a procedural default based upon a late filing. If the prison had accepted and mailed Maples's petition when he first attempted to deliver it-five days before the state's deadline-we have no doubt that it would have been timely delivered in the normal course of events."); *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) ("when a prisoner submits a [state pleading] to the prison mailroom five days prior to a filing deadline and it is not delivered there is 'cause to excuse [the] procedural default.'") (quoting *Maples*, 340 F.3d at 439)).

Boyd asserts, and provides documentation in support, that prison authorities held the mail from the Court of Appeals advising him of the disposition of his Rule 26(B) Application to Reopen for 44 days. This delay, "present[ed] an 'objective factor material to the defense [that] impeded ...

13

efforts to comply with the State's procedural rule.'" *Maples*, 340 F.3d at 439 (quoting *Coleman*,

501 U.S. at 753). As such, Boyd has demonstrated cause to excuse the procedural default of

Ground Four.

Accordingly, the Court will review Grounds Three and Four on the merits.

## V.    Analysis of the Merits

### A.    Speedy Trial- Grounds One and Three

In Grounds One and Three, Boyd contends that his speedy trial rights were violated. (ECF

No. 8-1 at PageID# 232-235, 241-242). In his direct appeal, Boyd raised an Ohio statutory speedy

trial claim and a United States' constitutional speedy trial claim. (ECF No. 14 at PageID# 427).

The Court of Appeals considered the following relevant procedural history:

> {3} On January 14, 2021, bond was set at $250,000, and the trial court appointed
> counsel. A scheduling hearing was set for January 28, 2021; however, Boyd filed a
> continuance of the hearing until February 10, 2021. On February 5, 2021, a notice
> of substitution of counsel was filed along with a request for discovery, a motion to
> preserve evidence, and a demand for a bill of particulars. On February 9, 2021,
> defense counsel filed a motion to continue until March 4, 2021.
>
> {4} On March 4, 2021, Boyd filed a motion to suppress evidence obtained as fruits
> of an unconstitutional search. A motion for a continuance was filed by defense
> counsel to re-set the March 4, 2021, hearing until April 9, 2021, in order to hold a
> hearing on the motion to suppress. Shortly thereafter, the trial court scheduled a
> suppression hearing for April 29, 2021.
>
> {5} On April 20, 2021, Boyd filed a supplemental motion to suppress and a motion
> for a Franks hearing pursuant to *Franks v. Delaware*, 438 U.S.154, 98 S.Ct. 2674,
> 57 L.Ed.2d 667 (1978). The supplemental motion challenged the validity of a
> search warrant as well as statements made by Boyd without warnings as required
> under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
>
> {6} At the April 29, 2021, hearing, both parties appeared and requested a
> continuance of the motion to suppress hearing in order to have all the necessary
> witnesses present to cover the issues raised in both of Boyd's motions. As a result,
> the trial court rescheduled the motion hearing to May 14, 2021, at which time a
> hearing was held. At the conclusion of the State's evidence, defense counsel
> requested that another hearing date be scheduled in order for defense counsel to

14

subpoena a witness who had not been subpoenaed for the May 14, 2021, hearing date. The trial court agreed, and a hearing was scheduled for June 2, 2021.

{¶7} On June 2, 2021, the defense witness did not appear, and a continuance of the hearing was granted until June 17, 2021. However, a hearing was held on June 2, 2021, regarding a motion for a modification of bond filed by Boyd. Although a hearing was scheduled for June 17, 2021, the record does not reflect that any hearing was held on that date.

{¶8} Pursuant to the trial court's briefing schedule, the State filed a response to Boyd's motions on July 20, 2021, and Boyd filed a post-hearing brief in support of his motions on August 6, 2021.

{¶9} The case was scheduled for a hearing on September 23, 2021, for the trial court to render a decision on the motion to suppress. However, defense counsel contacted the court and requested that the court "hold off on any decisions" because there were "some plea negotiations" pending between Boyd and the State. Supp. Tr. p. 2.1. As a result, the trial court agreed to not issue a decision and continued the hearing per defense counsel's request until October 14, 2021.

{¶10} No hearing occurred on October 14, 2021, but a scheduling conference occurred on November 10, 2021, at which point a trial date was set for January 31, 2022. The trial court indicated on the record that it would file its decision on the motion to suppress shortly. Supp. Tr. at p. 3. On December 21, 2021, the trial court filed an entry overruling Boyd's motion to suppress in its entirety.

{¶11} On January 24, 2022, Boyd filed a motion to dismiss based on a violation of both his statutory and constitutional rights to a speedy trial. The following day, the trial court overruled Boyd's motion orally on the record followed by a written decision. Immediately after his motion was orally overruled, Boyd entered a no contest plea to the charges as stated in the indictment, except for one count of sale to underage persons, in exchange for an agreed mandatory indefinite prison sentence of 11 years minimum to 16½ years maximum. Sentencing was scheduled for February 17, 2022.

{¶12} On January 31, 2022, Boyd filed a motion to withdraw his no contest pleas. Shortly thereafter, Boyd's counsel filed a motion to withdraw, and new counsel was appointed. On March 24, 2022, Boyd appeared in open court with new counsel and agreed to withdraw his motion to withdraw his pleas and proceed with sentencing. The trial court ran all counts concurrently and sentenced Boyd to the agreed 11 years minimum sentence up to a maximum of 16½ years in prison. Boyd timely appealed.

(ECF No. 14 at PageID# 473-475).

The Court of Appeals denied Boyd's statutory and constitutional claims of a speedy trial violation. (*Id.* at PageID # 476-488). The Court of Appeals determined that Boyd failed to establish that the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) for a constitutional speedy trial violation weighed in his favor. (ECF No. 14 at PageID# 476-488). In doing so, the Court of Appeals charged a total of 60-days of delay against the state. (*Id.* at PageID# 482). It calculated those days as the delay between indictment on January 2, 2021, and a scheduling conference on January 28, 2021 (26 days) and the delay between December 21, 2021, when the trial court issued its decision on the motions to suppress, and January 24, 2022, when Boyd filed his motion to dismiss (34 days).

As an initial matter, the Court will address Respondent's argument that parts of Boyd's speedy trial claim are non-cognizable in federal habeas review. To the extent Boyd seeks federal habeas relief for a violation of Ohio statutory law, the Court agrees. "[B]ecause the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy trial statute or state case-law interpreting the Ohio statute." *Anderson v. Warden, Lebanon Corr. Inst.*, No. 1:18-CV-149, 2019 WL 3245326, at *6 (S.D. Ohio Apr. 30, 2019) *report and recommendation adopted*, *Anderson v. Warden, Lebanon Corr. Inst.*, No. 1:18-CV-149, 2019 WL 2502796 (S.D. Ohio June 17, 2019). To the extent Boyd contends that he is entitled to habeas relief because of a defect in or denial of oral argument at any stage of his state court proceedings, that claim is also non-cognizable. *Simpson v. Jones*, 238 F.3d 399, 406–407 (6th Cir. 2000) ("alleged errors involving a state court's interpretation of its own procedural rules are not cognizable in federal habeas corpus review.")

It also appears that Boyd is seeking in Grounds One and Three to expand the record beyond the scope of materials that were considered by the Court of Appeals.[2] (ECF No. 8-1 at PageID# 225-232, 236-240). Boyd's request is prohibited by Supreme Court precedent. The Supreme Court held in *Cullen v. Pinholster*, 563 U.S. 170 (2011), that habeas review by a federal court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. at 180. The limitations in *Pinholster* apply to expansion of the record as well as to evidentiary hearings. *Moore v. Mitchell*, 708 F.3d 760, 780–784 (6th Cir. 2013).

The Court now turns to Boyd's constitutional speedy trial claim. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. CONST. amend. VI. The speedy-trial right is "amorphous," "slippery," and "necessarily relative," so any claimed violation must be evaluated on an "*ad hoc* basis." *Barker*, 407 U.S. at 522, 530.

In *Barker*, the Supreme Court established four factors for courts to consider when evaluating a speedy-trial claim: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice to the defendant resulted. 407 U.S. at 530. "No one factor is dispositive. Rather, they are related factors that must be considered together with any other relevant circumstances." *United States v. Sutton*, 862 F.3d 547, 559 (6th Cir. 2017) (citing *Barker*, 407 U.S. at 533).

The first factor is a "threshold" requirement. *Doggett v. United States*, 505 U.S. 647, 652 (1992). The rationale here is that judicial examination of a speedy trial claim is needed only where

---

[2]      The exact nature of the materials Boyd is seeking to expand the record with are unclear, but it appears, at a minimum, he is seeking testimony on off-the-record discussions pertaining to plea negotiations. (ECF No. 14 at PageID# 226). In Ground Three, Boyd asks for oral arguments related to his motion to dismiss to be made part of the record. It is unclear what Boyd is seeking because the trial court made an oral ruling without argument on Boyd's motion to dismiss on January 25, 2022. (ECF 14-1 at PageID# 1400-1403).

the delay crosses the line dividing the "ordinary" from the "presumptively prejudicial." *Id*. at 651–52. The Supreme Court has never clearly drawn that line but has noted that "[d]epending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial'" once the delay "approaches one year." *Id*. at 652 n.1, 658. Although "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay." *Id.* at 656 (internal citation omitted).

The second *Barker* factor looks at "whether the government or the criminal defendant is more to blame for th[e] delay." *Id.* at 651. "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citing *Barker*, 407 U.S. at 531). Thus, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531.

The third factor relates to "the defendant's responsibility to assert his right," and its effect will depend on the other factors. *Id*. "The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain." *Id*.

The fourth and final *Barker* factor is actual prejudice to the accused. Prejudice is assessed in the light of the defendant's interests, of which there are three: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility

that the defense will be impaired." *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011)

(quoting *Barker*, 407 U.S. at 532).

The Court of Appeals considered the *Barker* factors and concluded that Boyd's

constitutional speedy trial rights had not been violated:

> {22} Boyd filed his first motion to suppress on March 4, 2021, and a supplemental motion in April 2021; the trial court overruled Boyd's motions on December 21, 2021. While the amount of time the trial court took to render a decision was lengthy…the entirety of the time Boyd's motions were pending was chargeable to him for speedy trial purposes.
>
> ***
>
> {26} …this case involved multiple serious felony charges and a codefendant, which made the case relatively complex. The decision on the motion to suppress was 17 pages long and dealt with complicated legal issues, as demonstrated by our discussion of Boyd's second assignment of error, below, wherein Boyd challenged the trial court's rulings on his motions to suppress. Considering the several extensions of time made at Boyd's request and the need for the trial court to thoroughly research and contemplate the issues raised by Boyd's motions, the amount of time taken by the trial court in ruling on the motions was reasonable. Based on the record before us, we conclude that the entirety of the time taken to rule on Boyd's motions to suppress was not charged to the State.
>
> ***
>
> {33} Boyd was arrested on January 2, 2021, and entered no contest pleas on January 25, 2022. Generally, as a case approaches the one-year mark, the delay is enough to trigger the Barker inquiry. However, cases involving serious charges with complex issues allow for more delay than "an ordinary street crime." *Barker* at 531. Furthermore, "[b]efore calculating any delay in proceeding to trial, the court must subtract the part of the delay attributable to the defendant." *State v. Anderson*, 7th Dist. Columbiana No. 2002 co 30, 2003-Ohio-2557, ¶17, citing *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶65-66.
>
> {34} Here, Boyd was charged with two counts of trafficking in persons and one count of aggravated possession of drugs, all of which were first-degree felonies requiring mandatory prison time. He was also charged with one count of corrupting another with drugs, a felony of the second degree, which required mandatory prison; three counts of having weapons while under disability, felonies of the third degree; aggravated menacing and assault, both misdemeanors of the first degree; and one count of sale to underage persons, an unclassified misdemeanor. Additionally, this case involved a co-defendant who was also charged with first- and second-degree felonies. Finally, the delay of just over 12 months was not inordinately long considering that the majority of the delay was the result of Boyd's own actions. After subtracting those parts of the delay attributable to Boyd, the time between his arrest and his pleas was only 60 days. We cannot conclude under these

circumstances that the delay was presumptively prejudicial to trigger a *Barker* analysis. For this reason alone, Boyd's constitutional speedy trial challenge must be rejected. Nevertheless, we will consider the remaining Barker factors.

{35} The second factor to consider is the reason for the delay. "Only the portion of the delay which is attributed to the government's neglect is to be weighed in a defendant's favor." *Triplett*, 78 Ohio St.3d at 569, 679 N.E.2d 290, citing *Doggett*, 505 U.S. at 658, 112 S.Ct. 2686, 120 L.Ed.2d 520. As we previously addressed, the entirety of the time it took for the trial court to rule on Boyd's motions was reasonable under the circumstances of this case. Thus, of the 387 days that elapsed, only 60 days were attributable to the State. This factor weighed heavily against Boyd.

{36} The third Barker factor is the defendant's assertion of his right to a speedy trial. *Barker* at 530. As the Supreme Court of Ohio explained: It is well established under our law that the right to a speedy trial conferred by the Constitution is not self-executing. Affirmative action on the part of an accused in the nature of a demand to be tried is necessary to invoke the protection of the Constitution. * * * In other words, there can be no denial where there has been no demand. The purpose of Section 10, Article I, is to provide a trial for an accused without undue delay with its attendant anxieties and the possibility that the defense might be prejudiced by the lapse of time. However, it was not intended as a shield to the guilty, the protection of which might be invoked by sitting silently back and allowing the prosecution to believe that the accused is acquiescing in the delay. It is a right which must be claimed, or it will be held to have been waived. (Citations omitted.) *Partsch v. Haskins*, 175 Ohio St. 139, 140, 191 N.E.2d 922 (1963).

{37} Here the record before us does not reflect any assertion by Boyd of his speedy-trial right prior to the filing of his motion to dismiss on speedy-trial grounds. Boyd did not object to the trial court's scheduling of the case at any time, including the time leading up to the January 31, 2022, trial date. Notably, Boyd appeared in court for a final pretrial hearing on January 20, 2022, and the only concern he had at that time was making sure he received a response to his request for a bill of particulars. After the State filed a bill of particulars, Boyd filed his motion to dismiss on January 24, 2022, one week prior to trial and the night before he entered his no-contest pleas. Therefore, the third Barker factor weighed against finding a constitutional speedy-trial violation.

{38} Lastly, Boyd did not establish any prejudice resulting from the delay. "In *Barker*, the court stated that prejudice should be evaluated in light of three interests that the speedy trial right is intended to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *State v. Lewis*, 2d Dist. Montgomery No. 28962, 2021-Ohio-1895, ¶ 78, quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d

101. However, Boyd never specified in the trial court or on appeal how he was prejudiced, and there was no evidence in the record to suggest that Boyd was prejudiced, such as a witness's death or evidence that become unavailable owing to the delay. *Barker* at 534. Consequently, this factor did not weigh against the State for constitutional speedy-trial analysis.

{39} Considering each of the Barker factors, the trial court did not err in denying Boyd's motion to dismiss for a constitutional speedy trial violation.

(ECF No. 14 at PageID# 480-487).

Boyd argues that he is entitled to habeas relief, taking issue with the state court's analysis of the *Barker* factors—length and reason for the delay. Boyd argues that he did not consent to the continuances his counsel requested (ECF No. 8-1 at PageID# 231), and the delay attributed to ongoing plea negotiations should not count because it is not true. (*Id.* at PageID# 229-231).

The first *Barker* factor serves as a threshold to any Sixth Amendment speedy trial claim. *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530; *see also United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999). A delay is presumed prejudicial when it exceeds one year. *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001); *United States v. Mundt*, 29 F.3d 233, 235 (6th Cir. 1994). Here, Boyd was arrested on January 2, 2021 (ECF No. 14-1 at PageID# 1333, 1341-1342) and he pled no contest to the indictment on January 25, 2022. (ECF No. 14-1 at PageID# 1399-1420). The delay exceeded one year by twenty-three days. However, the record reflects, as noted by the Court of Appeals, that most of the delay is attributable to the defense and only 60 days were the fault of the state.

The record reflects that the defense requested certain continuances to review discovery (ECF No. 14 at PageID# 331-332), litigate the motion to suppress (ECF No. 14-1 at PageID# 1390), and pursue plea negotiations (*Id.* at PageID# 1437). Boyd argues that these delays should

not be attributed to the defense because he did not consent, but delays sought by counsel are ordinarily attributable to the defendants they represent. *Vermont v. Brillon*, 556 U.S. 81, 85 (2009).

Boyd next argues that the delay between the September 23, 2021, hearing and the December 21, 2021, ruling on his motion to suppress should be attributed to the state instead of him. (ECF No. 8-1 at PageID# 226-229). Boyd argues that the trial court should have ruled on his motion to suppress instead of granting a continuance at the September 23, 2021, hearing because it was not true that ongoing plea discussions were taking place. The record demonstrates otherwise.

At the September 23, 2021 hearing, the trial court made the following statement on the record:

> THE COURT:   Okay. So just so I can keep some things clear on the record here. There was a motion to suppress that was held in this case and the Court was prepared to issue the decision yesterday on the motion to suppress; however, Mr. Kordalis indicated that he's still working with the State of Ohio and based on the limited speedy trial time I think that's in this case had asked that we hold off on any decisions because there are some plea negotiations that are going on currently. And so, I agreed to hold off on my decision for the time being. And so, we'll continue this until October 14th for a possible plea in this case.

(ECF No. 14-1 at PageID# 1437). At the January 25, 2025, plea hearing, the following exchange occurred:

> THE COURT:   With that being said, it's my understanding, Mr. Boyd, after many months of discussion with your attorney and the State on this case -- and I do want to point out for the record as well, that there were ongoing negotiations in this case. And this Court was asked to hold up doing anything in this case, because there was ongoing negotiations; and so that's what the Court did, and before it issued its decision in this case. But nevertheless, Mr. Boyd, after extensive discussions with the State of Ohio, as well as your counsel in this case, I had indicated that if you were to plead as charged to the charges in the indictment, the counts in the indictment, that I would render the sentence in this case of 11 years; is that your understanding of the plea?

22

| | |
|---|---|
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | And you understand that's what's going to happen? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Okay. Now, I want you to know the State didn't make any offers, I don't believe? |
| MS. AMRHEIN: | Correct, Your Honor. |
| THE COURT: | Okay. So, there were no offers made by the State. But I had indicated that this was likely what I would do if you were to plead to the charges in the indictment. Okay? And that's your understanding? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | And is that what you want to do today? |
| THE DEFENDANT: | Yes, ma'am. |

(ECF No. 14-1 at PageID# 1402-1403). Contrary to Boyd's argument (ECF No. 8-1 at PageID# 231), the fact that the state made no offer does not mean negotiations were not taking place. In any event, the trial court and the Court of Appeals concluded that the continuance was urged by the defense for this reason (ECF No. 14-1 at PageID# 518-519, 1437), and Boyd has failed to show by clear and convincing evidence that the state courts' conclusions were incorrect. *See* 28 U.S.C. § 2254(e)(1) ("…a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

More to the point, Boyd offers no argument for the most important of the *Barker* factors—prejudice.  Noted above, on January 25, 2022, Boyd pleaded no contest and received a sentence of eleven years. (ECF No. 14-1 at PageID# 1403). Boyd has not identified how the delay between his arrest on January 2, 2021, and his plea on January 25, 2022, impaired his ability to defend the

charges against him. Indeed, a substantial amount of that time, March 4, 2021, to December 21, 2021 (ECF No. 14 at PageID# 333-339, 371-387), was spent by the defense preparing and presenting a motion to suppress that the Court of Appeals described as involving "complicated legal issues." (ECF No. 14 at PageID# 481). To the extent the trial court was ready to rule on the motion in September 2021, the delay until December 2021 was spent by the defense attempting to secure a favorable plea agreement.

The Court of Appeals' decision was neither contrary to nor an unreasonable application of *Barker*. The delay in this case only exceeded one year by twenty-three days, only sixty of which are the fault of the state. Moreover, most of the delay was attributable to the defense's litigation of a motion to suppress and attempts to negotiate a plea agreement. Boyd offers a more favorable calculation of the delays (ECF No. 8-1 at PageID# 230-231), but has failed to demonstrate that the Court of Appeals' calculation is incorrect by clear and convincing evidence or that he was prejudiced by any of the delay. In sum, Boyd fails to show that no reasonable jurist would reach the same conclusion as the Court of Appeals in finding that his constitutional speedy trial rights were not violated. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Ground One is without merit and should be dismissed.

### B. Denial of Motion to Suppress-Ground Two

In Ground Two, Boyd argues that he is entitled to habeas relief because evidence was seized from his home in violation of the Fourth Amendment and his Motion to Suppress should have been granted. (ECF No. 8-1 at PageID# 232-235). Respondent argues that the claim is barred by the United States Supreme Court case, *Stone v. Powell*, 428 U.S. 465 (1976). The Court agrees.

On March 4, 2021, Boyd filed a Motion to Suppress the evidence seized from his home by police during a protective sweep and pursuant to a search warrant. (ECF No. 14 at PageID# 333-

339). The trial court held a hearing on May 14, 2021, where three law enforcement witnesses testified about the facts and circumstances surrounding the entry of Boyd's home on January 2, 2021. (ECF No. 14-1 at PageID# 1294-1392). The trial court denied Boyd's motion in an opinion issued on December 21, 2021. (ECF No. 14 at PageID# 371-387). Boyd appealed the decision to the Court of Appeals (*id.* at PageID# 427) and to the Ohio Supreme Court. (*Id.* at PageID# 548).

"[W]here the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 482 (footnotes omitted). Clearly established precedent explains, Powell's "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Consequently, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.*

The *only* relevant question for this federal habeas Court is whether Boyd was provided an opportunity to present his Fourth Amendment claim to the Ohio state courts. He presented his claim to the trial court during a suppression hearing, to the Court of Appeals, and to the Supreme Court of Ohio. Boyd was not denied an opportunity to present his claim in state court and as a result, his Fourth Amendment claim is not cognizable in habeas corpus.

The *Stone v. Powell* bar applies regardless of the merits of a habeas petitioner's Fourth Amendment claim:

> Under *Stone* the correctness of the state courts' conclusions is simply irrelevant. The courts that have considered the matter "have

25

consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir.1986); *see also, Willett*, 37 F.3d at 1270 (citing cases). An argument directed solely at the correctness of the state court decision "does not go to the fullness and fairness of his opportunity to litigate the claim [s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir.1994). As succinctly put by the Seventh Circuit, "'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir.2003).

*Beechler v. Timmerman-Cooper*, No. 2:11-CV-696, 2012 WL 524440, at *15 (S.D. Ohio Feb. 16, 2012), *report and recommendation adopted*, No. 2:11-CV-696, 2012 WL 871205 (S.D. Ohio Mar. 13, 2012).

Because Ohio provided Boyd with a procedural mechanism to litigate his Fourth Amendment claim, this Court is without the power to address the merits of Ground Two. Ground Two is non-cognizable in federal habeas review and should be dismissed.

### C. Ineffective Assistance of Appellate Counsel- Ground Four

In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of postconviction proceedings and must be raised through an application to reopen the direct appeal under Ohio App. R. 26(B). *Hoffner v. Bradshaw*, 622 F.3d 487, 504 (6th Cir. 2010). Boyd filed an Ohio App. R. 26(B) Application to Reopen his appeal with the Second District Court of Appeals arguing that his direct appeal counsel was ineffective for failing to raise various assignments of error in his direct appeal. (ECF No. 22-1). The Second District Court of Appeals issued an opinion on November 15, 2023, denying the application. (ECF No. 14 at PageID# 1202-1212). In pertinent part:

App.R. 26(B)(2)(c) provides that the application for reopening shall contain "[o]ne or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or

that were considered on an incomplete record because of appellate counsel's deficient representation." None of Boyd's arguments suggest that this Court considered the assignments of error raised on appeal on an incomplete record. Rather, Boyd alleges that his appellate counsel's arguments raised on appeal were inadequate, which resulted in ineffective assistance of appellate counsel. Boyd lists several errors that appellate counsel "failed to raise and ignored." These include:

> (1)Prejudice to be argued; (2) Brady violations; (3) Warrant, (4) Affidavit's on the Warrant; Officer Kloos Official Reports; (5) Bill of particular not answered in discovery and provided a year later; (6) Officer Kloos testimony in the suppression Hearing as first on the scene, and first in contact; (7) [trial court counsel's] Withdrawal of Franks Motion; (8) Deceptions on the Courts Records where [trial court counsel] claimed" ... Plea negotiations were going on ..." when there was no plea being negotiated on September 23, 2021 to December 21, 2021; (9) Unjournalized continuances; (10) Continuances requested and granted, without reasons on the record on September 22, 2021 to October 14, 2021; (11) Suppression of evidence by [trial court counsel] and State of Ohio. * * * (12) Unreasonable Ineffective assistance of trial counsel that was never raised in the appeal, by [appellate court counsel].*** (13) Abuse of Discretion issue raised has ignored substantive and procedural law and facts significant to the appellant Boyd's exoneration.

Although Boyd lists 13 alleged errors, he does not provide support or citations to the record for several of them. For example, he does not explain what "prejudice to be argued" means or what evidence in the record supported a "Brady violations" argument. Regarding the alleged errors for which he did provide an argument, each related to the two assignments of error that were actually raised by his appellate counsel: the trial court's failure to dismiss the case for speedy trial violations and erroneously overruling his motion to suppress.

As it relates to Boyd's motion to suppress, Boyd argues that his trial counsel was ineffective for failing to have Officer Kloos testify. The record reflects that after the State presented testimony at the motion to suppress hearing, defense counsel requested a continuance to obtain an additional witness for a hearing on June 2, 2021. Although a subpoena was sent to Officer Kloos for that hearing, the return indicates that he was untimely served on June 1, 2021, and did not appear for the June 2, 2021, hearing date. However, the parties agreed to continue the hearing to June 17, 2021, to allow additional time for the defense to subpoena Officer Kloos. Officer Kloos was timely served with a subpoena for the June 17, 2021, hearing. As Boyd points out, there is no transcript in the record for any hearing that may have occurred on June 17, 2021. Boyd alleges in his affidavit, however, that: 1) Officer Kloos did appear on June 17, 2021; 2) Kloos met with the parties off the record in the trial court's chambers; but 2) no testimony was presented that day because his trial attorney declined to have Officer Kloos testify, since Officer Kloos

did not remember anything from the events in question. Boyd also submitted an alleged copy of the police report with his application for reopening.

To the extent that Boyd has included several documents and arguments that are outside the record, we cannot and will not consider these. "[A] bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial." *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13. "Nor can the effectiveness of appellate counsel be judged by adding new matter to the record and then arguing that counsel should have raised these new issues revealed by this newly added material." *State v. Moore*, 93 Ohio St.3d 649, 650, 758 N.E.2d 1130 (2001).

We do not know what Officer Kloos would have testified to at the hearing if he had been called as a witness. Notably, there is nothing in the record, such as a proffer, for us to review. Furthermore, counsel's decision whether to call a witness generally falls within the rubric of trial strategy and will not be second-guessed by a reviewing court. *State v. Treesh*, 90 Ohio St.3d 460,490, 739 N.E.2d 749 (2001). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015- Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524- 525, 605 N.E.2d 70 (1992). Absent any evidence in the record as to Officer Kloos' potential testimony, we cannot conclude that Boyd suffered any prejudice as a result of Officer Kloos' failure to testify or Boyd's appellate counsel's failure to raise the issue. This is not to say that Boyd could not make the same argument for ineffective assistance of trial counsel in a petition for post-conviction relief by relying upon evidence that is not in the record. *State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶ 41 (ineffective assistance of counsel claims relying on evidence outside the record may be raised in post-conviction proceedings). However, based on the record before us, the failure to allege ineffective assistance of trial counsel for declining to have Officer Kloos testify at the motion to suppress hearing was insufficient to form the basis for a claim of ineffective assistance of appellate counsel.

Boyd also contends that appellate counsel failed to address certain facts that would have bolstered the argument that the trial court abused its discretion in overruling his motion to suppress. However, Boyd relies primarily on his personal observations and police reports that are not included in the record before us. For example, Boyd points to certain factual allegations that he contends appellate counsel failed to address, such as that he was never provided with a copy of the search warrant affidavit, and he had no idea the type of situation he was in with the young ladies. As addressed above, any information that was outside the record could not have been argued on appeal to support an assignment of error and therefore cannot be used to substantiate a claim of ineffective assistance of appellate counsel.

Boyd also argues that appellate counsel failed to point out the time frame between when the officers entered the home without a warrant and when the search warrant was obtained, which he argues was a constitutional violation. However, appellate counsel did raise that argument. Appellate counsel argued that because the initial warrantless entry into the home was unconstitutional, then any information learned as a result of that unlawful entry tainted the search warrant to the degree that any evidence found in Boyd's home should have been suppressed. This argument, therefore, considers that the officers entered Boyd's home prior to obtaining the search warrant. In addressing this contention, we stated that:

> Because we have concluded that the warrantless entry in this case was lawful, any observations the police made while inside Boyd's home could have been used to obtain the subsequent search warrant. Consequently, any evidence collected pursuant to the execution of the search warrant was admissible, and the trial court did not err in overruling Boyd's motion to suppress in its entirety. *Boyd*, 2023-Ohio-2079, 218 N.E.3d 998, at 1171.

We see nothing in the record that was not previously considered when this Court affirmed the trial court's judgment overruling Boyd's motion to suppress; therefore, we cannot conclude that Boyd has demonstrated that there is a genuine issue that appellate counsel's performance was constitutionally deficient, and that the deficient performance prejudicially affected him.

Regarding the denial of his motion to dismiss, Boyd contends the trial court's mention of Officer Kloos testifying was deceptive, resulting in a violation of his constitutional rights. The trial court's statements at issue were as follows:

> On May 14th, the motion to suppress was held, but it was again continued until June 2nd for another witness to testify. On June 2nd, 2021, at that motion to suppress hearing, an officer in the case, George Kloos, did not appear. And so the case was then continued, again, until June 17th at 1:30 p.m., and the motion to suppress was held on that date, with the addition of that officer testifying. Hrg. Tr. 112.

The statements were made as part of the trial court's explanation denying Boyd's motion to dismiss. It is clear from the record that the trial court was reviewing the docket, wherein the dates mentioned reflected what had been scheduled to occur on those dates. However, the trial court's misstatement about Officer Kloos testifying had no bearing on either Boyd's motion to suppress or his motion to dismiss. Thus, it did not support any alleged constitutional violation.

Finally, as it relates to Boyd's remaining contentions about the trial court's denial of his motion to dismiss, Boyd appears to merely disagree with this Court's decision. Boyd points to various dates when tolling events occurred and takes issue with the reasons continuances were requested and/or granted. For example, Boyd raises a concern about the amount of time it took for the State to file a response to

his request for a bill of particulars. Boyd filed a request for a bill of particulars on February 5, 2021, and the State filed a response on January 21, 2022. A request for a bill of particulars can constitute a tolling event pursuant to R.C. 2945.72(E). See *State v. Brown*, 98 Ohio St.3d 121, 2002- Ohio-7040, 781 N.E.2d 159, syllabus. However, when calculating Boyd's speedy trial time, we did not toll the entirety of the time it took for the State to respond to the request for a bill of particulars, because there were other tolling events, and tolling the entirety of that amount of time would have been unreasonable. We also note that the State's untimely response to Boyd's request for a bill of particulars did not affect his constitutional rights. The bill of particulars was filed prior to Boyd's decision to enter a negotiated plea. Therefore, he was aware of the specific nature of the offenses charged and the conduct alleged to constitute the offenses upon which the State intended to proceed, and no prejudice can be found.

(ECF No. 14 at PageID# 1205-1210).

In his habeas petition, Boyd makes a non-specific claim that his Application to Reopen should have been granted. (ECF No. 8-1 at PageID# 241-242). Mentioned above, the Court of Appeals found that Boyd only appropriately presented these issues: (1) his appellate counsel was ineffective for failing to assert that his trial counsel was ineffective for failing to call Officer Kloos as a witness at the motion to suppress hearing, and (2) his appellate counsel was ineffective for failing to assert a meritorious argument in his motion to suppress regarding the lapse of time between the warrantless entry and procurement of the warrant, and (3) his appellate counsel was ineffective for failing to assert meritorious arguments concerning his motion to dismiss on grounds of speedy trial. (ECF No. 14 at PageID# 1205-1210). To exhaust state court remedies, a claim must be fairly presented "to every level of the state courts in one full round." *Ambrose v. Romanowski*, 621 F. App'x 808, 814 (6th Cir. 2015). Accordingly, these are the only three claims that were properly presented to the Court of Appeals and are the only claims the Court will address.[3]

---

[3]     Noted above, Respondent argued that all of Ground Four was procedurally defaulted because Boyd failed to appeal to the Ohio Supreme Court, but the Court found cause to excuse that default. Here, the Court sua sponte raises the issue that Boyd's failure to properly present some of his claims to the Court of Appeals resulted in a procedural

"In all criminal prosecutions," the Sixth Amendment affords "the accused...the right...to Assistance of Counsel for his defence." U.S. CONST. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010). As to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." *Id.* at 694.

---

default. *See Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004) (holding it is not inappropriate for the district court to raise procedural default sua sponte).

The Court will also not address any claim rejected by the Court of Appeals because it relied on evidence outside of the record. To do so would require the Court to consider evidence that is not part of the state court record. *See Cullen v. Pinholster*, 563 U.S. 170 (2011) (holding that the consideration of new evidence developed in federal habeas corpus is precluded as to claims that the state courts adjudicated on the merits).

Where an exhausted claim of ineffective assistance of trial counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). That is, "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether trial counsel was ineffective, but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The Supreme Court clarified the double deference that is due:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal citation omitted). A petitioner must show the state court's decision is so obviously wrong that its error lies "beyond any possibility for fairminded disagreement." *Id.* at 103. Congress "meant" this standard to be "difficult to meet." *Id.* at 102.

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009)). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue

would have changed the result of the appeal. *Id.* (citing *Wilson*, 515 F.3d 682)). The attorney need not advance every argument, regardless of merit. *Jones v. Barnes*, 463 U.S. 745, 751–752 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004). *See Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017) (quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008)).

### Failing to Call Officer Kloos at Motion to Suppress Hearing

Boyd contends that his appellate counsel was ineffective for failing to argue on direct appeal that his trial counsel was ineffective for failing to call Officer Kloos as a witness at the motion to suppress hearing. The Court of Appeals concluded that the record was devoid of any proffer of what Officer Kloos would have testified to if he had been called as a witness. (ECF No. 14 at PageID# 1207). Also, the Court of Appeals found that trial counsel's decision on whether to call witness is a strategic one, to which the court should defer and from which Boyd could show no prejudice. (*Id.* at PageID# 1206-1208).

Boyd has pointed to nothing in the state court record that demonstrates that Kloos' had outcome-determinative testimony for his motion to suppress. Moreover, Boyd has failed to overcome the deference owed to his counsel's strategic choices or the Court of Appeals' decision dismissing this claim. *See Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012) ("[w]hether to call a witness and how to conduct a witness' testimony are classic questions

33

of trial strategy that merit *Strickland* deference"); *Stermer v. Warren*, 959 F.3d 704, 736 (6th Cir. 2020) ("[the *Strickland* standard] is "doubly deferential," because AEDPA provides deference to the state court, which in turn is expected to give considerable deference to trial counsel's decisions").

*Failure to Argue Time Lapse*

Next, Boyd claims that his appellate counsel was ineffective for failing to assert a meritorious argument in his motion to suppress that the lapse of time between the warrantless entry and procurement of the warrant rendered the entry unconstitutional. The Court of Appeals found that Boyd's argument was a re-packaged version of the same argument made by appellate counsel on direct appeal that contended the warrantless entry was unconstitutional. (ECF No. 14 at PageID# 1208-1209). The Court of Appeals rejected the argument on direct appeal, concluding that the warrantless entry was constitutional due to exigent circumstances. (*Id.* at PageID# 493-499).

The re-packaged argument that Boyd contends his appellate counsel should have urged would have fared no better on direct appeal than the one that was raised. The facts upon which the Court of Appeals based its decision are the same—the Dayton Police Department acted on information that two fourteen-year-old girls were in imminent danger inside of Boyd's home. The Court of Appeals found that these facts triggered the exigent circumstances exception to warrantless entry:

> Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).") …Considering the totality of the circumstances in this case, we conclude that the officers acted under objectively reasonable exigent circumstances to enter Boyd's home out of concern for the safety of the two missing

34

juveniles. Thus, under the emergency aid exception, officers lawfully entered Boyd's home.

(ECF No. 14 at PageID# 496).

For these reasons, Boyd has failed to demonstrate that the Court of Appeals' dismissal of this claim was contrary to or an unreasonable application of *Strickland*.

*Motion to Dismiss*

Finally, Boyd argued in his Motion to Reopen that his appellate counsel was ineffective because he should have raised meritorious arguments concerning his motion to dismiss for violation of his speedy trial rights. (ECF No. 22-1 at PageID# 1767-1774).  Boyd particularly argued that the trial court erred when ruling on his motion to dismiss by stating that Officer Kloos testified at the motion to suppress hearing (*id.* at PageID# 1767-1770) and erred in its calculation of the speedy trial delays (*id.* at PageID# 1770-1774).

The trial court made an inconsequential error of fact in its oral ruling on Boyd's motion to dismiss. The trial court stated that Officer Kloos testified at the motion to suppress hearing when the record reflects that he did not. (*Id.* at PageID# 1209-1210). The Court of Appeals concluded that this statement had no impact on the merits of the speedy trial analysis. (ECF No. 14 at PageID# 1210) (see also Section V(A), above). Because Boyd cannot show the outcome of his appeal would have been different if his appellate counsel had raised this issue, it should be dismissed for lack of merit.

Boyd also argues that his appellate counsel should have argued that certain delays should have been charged against the state for purposes of the speedy trial calculation. (ECF No. 22-1 at PageID# 1770-1774). The Court of Appeals disagreed with Boyd's argument on the calculation of the delays and found that he failed to show that he was prejudiced in any way. (ECF No. 14 at PageID# 1210-1211). As such, Boyd has failed to show that his counsel's performance was

deficient or that the outcome of his appeal would have been different if his version of the speedy trial calculation had been advanced as an argument.

In his direct appeal brief, Boyd's appellate counsel raised the two issues that had the strongest likelihood of success on direct appeal: the merits of Boyd's speedy trial claim and the merits of his motion to suppress. (*Id.* at PageID# 426-451). Boyd fails to demonstrate that the errors he believes his counsel should have raised would have been successful on appeal. When addressing his Rule 26(B) Application, the Court of Appeals determined that the properly presented claims lacked merit. As the last reasoned decision, this Court is bound to defer to that conclusion. Ground Four is without merit and should be dismissed.

## VI.    CONCLUSION

Boyd's claims are without merit. It is therefore **RECOMMENDED** that the habeas petition be **DENIED,** and this action be **DISMISSED WITH PREJUDICE.**

For the foregoing reasons, the Undersigned **RECOMMENDS:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 8, 8-1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the petition because petitioner has not stated a "viable claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by a petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and

therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED**.


February 2, 2026                                    *s/ Elizabeth A. Preston Deavers*
_____                                 _____
                                                    Elizabeth A. Preston Deavers
                                                    UNITED STATES MAGISTRATE JUDGE